COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-481-CR
 
 
DEMARCUS 
SIRRAY FORD                                                     APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        In 
his sole issue, Appellant Demarcus Sirray Ford appeals the sufficiency of the 
evidence to prove that a deadly weapon was used or exhibited in each of three 
counts of aggravated robbery of a Subway restaurant. We affirm.
PROCEDURAL HISTORY
        As 
will be set out in more detail in this opinion, on the evening of November 19, 
2002, two men entered a Subway restaurant in Arlington, Texas, one of them 
ordered the clerk to open the register, and the two men escaped with $88. The 
three clerks who were working that evening were eyewitnesses and testified at 
trial. Appellant was indicted for, and a jury convicted him of, three counts of 
aggravated robbery with a deadly weapon, to wit: a firearm. Each count arose out 
of the same criminal transaction but involved a different complainant. The jury 
assessed Appellant’s punishment at twenty-five years’ confinement and a 
$5,000 fine for each count; the trial court ordered these sentences to run 
concurrently.
        In 
his sole issue on appeal, Appellant contends the trial court erred in denying 
Appellant’s motion for directed verdict because the evidence was legally and 
factually insufficient to prove that a deadly weapon was used or exhibited in 
the commission of the offense.[2]  Specifically, 
Appellant contends that only one of the three eyewitnesses testified that 
Appellant used or exhibited a weapon during the commission of the offense, that 
a weapon or gun is not a deadly weapon per se, and therefore the State failed to 
meet the level of proof necessary to establish that Appellant used or exhibited 
a deadly weapon in the commission of the offense.
STANDARDS OF REVIEW
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the verdict in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Ross v. State, 133 S.W.3d 
618, 620 (Tex. Crim. App. 2004). This standard gives full play to the 
responsibility of the trier of fact to resolve conflicts in the testimony, to 
weigh the evidence, and to draw reasonable inferences from basic facts to 
ultimate facts. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. The trier of 
fact is the sole judge of the weight and credibility of the evidence. See 
Tex. Code Crim. Proc. Ann. art. 
38.04 (Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. 
App. 2000). Thus, when performing a legal sufficiency review, we may not 
re-evaluate the weight and credibility of the evidence and substitute our 
judgment for that of the fact finder. Dewberry v. State, 4 S.W.3d 735, 
740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000). We must 
resolve any inconsistencies in the evidence in favor of the verdict. Curry v. 
State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).
        In 
reviewing the factual sufficiency of the evidence to support a conviction, we 
are to view all the evidence in a neutral light, favoring neither party. See 
Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004). The only 
question to be answered in a factual sufficiency review is whether, considering 
the evidence in a neutral light, the fact finder was rationally justified in 
finding guilt beyond a reasonable doubt. Id. at 484. There are two ways 
evidence may be factually insufficient: (1) the evidence supporting the verdict, 
considered by itself, is too weak to support the finding of guilt beyond a 
reasonable doubt; or (2) when there is evidence both supporting and 
contradicting the verdict or judgment, weighing all of the evidence, the 
contrary evidence is so strong that guilt cannot be proven beyond a reasonable 
doubt. Id. at 484-85. “This standard acknowledges that evidence of 
guilt can ‘preponderate’ in favor of conviction but still be insufficient to 
prove the elements of the crime beyond a reasonable doubt.” Id. at 485. 
In other words, evidence supporting a guilty finding can outweigh the contrary 
proof but still be insufficient to prove the elements of an offense beyond a 
reasonable doubt. Id.
FACTUAL BACKGROUND
        Appellant 
and his co-defendant Joshua Knight were not identified and caught until sometime 
after the night of the incident. Following their arrest, each defendant signed 
separate written statements acknowledging that on November 19, 2002 they entered 
a Subway restaurant in Arlington, Texas. Appellant’s statement recites that on 
the night of the robbery he and Knight stopped at Subway for food; Appellant 
admitted that he knew that Knight had been robbing other Subway restaurants with 
other friends. According to Appellant, Knight jumped over the counter and the 
clerk started yelling. Appellant stated that he “figured then [Knight] was 
robbing the place.” Two other clerks were working that evening and Appellant 
said he just held up his hands and told one of them to calm down. Appellant said 
that after Knight took the money from the register, he and Appellant left. 
Appellant’s statement recites that he never had a weapon and did not think 
Knight had a weapon either, and he never got any of the money. Appellant did not 
testify at trial.
        In 
his statement, Knight said he is a heroin and cocaine addict. He admitted 
robbing the Subway with Appellant, but claims neither of them used a gun or any 
kind of weapon, and he made no verbal threats. He ordered an employee to open 
the register, and either Knight or the employee removed the money. Knight and 
Appellant left with the money which they split equally.
        Sanmukh 
Patel testified that he is the owner of the Subway restaurant in question. On 
November 19, 2002, two clerks were working with him in the restaurant. At 8:50 
p.m., a man rushed in, jumped over the counter, and demanded Patel give him 
money from the cash register. At the same time, Appellant walked in through a 
side door. Although Patel did not see a gun and no one mentioned a gun during 
the robbery, Patel was in fear of bodily injury or death if he did not comply 
with the demand for money.
        Mariah 
Morris testified that she was working in the Subway restaurant on the evening of 
November 19, 2002 when the owner started screaming. Two men entered the 
restaurant; one man jumped over the counter, and the other man came around to 
the side door of the restaurant. Morris slid underneath the counter right beside 
the door to get out of the way. Both of the men who had entered the restaurant 
declared they wanted money, and the man who had walked in the side door 
threatened to shoot. From Morris’s vantage point, she could clearly see the 
man behind the counter but could only see the second man from the waist down. 
(This second man is the one who had entered through the side door and who was 
later identified by other witnesses as Appellant). Morris saw Appellant reach 
“for what appeared to be a gun stuffed under his pants underneath his shirt 
and the butt -- like the bottom of a gun, the butt of the gun,” although 
Morris did not actually see a gun. During this time she was in fear of imminent 
bodily injury or death.
        Melinda 
Douglas was the third clerk working at the Subway restaurant on the evening of 
the robbery. She testified that a man came into the restaurant, jumped the 
counter, and said, “I’m not here to hurt anyone. All I want is the money.” 
Douglas tried to run out the door that was for “employees only,” but another 
man, Appellant, shoved her and pushed her into the kitchen area. The man who had 
jumped the counter kept demanding money and Appellant repeatedly said that if 
they didn’t give them any money he was going to shoot. Douglas saw Appellant 
retrieve a “weapon” from behind his back; Appellant continued to say that if 
they didn’t give them any money, he was going to shoot. When asked to describe 
the weapon that Appellant wielded in his hand, Douglas stated “I’m not 
really familiar with guns” but her father had one that was similar and the 
weapon that Appellant held was silver with a black handle and a short barrel. 
Douglas testified, “I was fixin’ to run until I seen the gun so I went 
back.” She acknowledged that Appellant never actually pointed the weapon, but 
she testified that she was very afraid and in fear of imminent bodily injury or 
death.
DISCUSSION
        A 
“deadly weapon” is defined by the penal code as:
  
(A) a firearm or anything manifestly designed, made, or adapted for the purpose 
of inflicting death or serious bodily injury; or
  
(B) 
anything that in the manner of its use or intended use is capable of causing 
death or serious bodily injury.
 
 
Tex. Penal Code Ann. § 1.07(a)(17) 
(Vernon Supp. 2004-05). The trial court’s charge to the jury contained this 
definition of “deadly weapon” as well as the definition of “firearm” set 
out in the penal code:
   
(3)“Firearm” means any device designed, made, or adapted to expel a 
projectile through a barrel by using the energy generated by an explosion or 
burning substance or any device readily convertible to that use.
 
 
Id. 
§ 46.01(3).  A firearm is a deadly weapon per se.  Ex parte Moore, 
727 S.W.2d 578, 580 (Tex. Crim. App. 1987).  However, a gun is not a deadly 
weapon per se. Id.; Ex parte Grabow, 705 S.W.2d 150, 151 (Tex. Crim. App. 
1986).  In determining the deadliness of a weapon the jury may consider all 
of the facts of a case, including words spoken by the accused.  Blain v. 
State, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983).
        The 
evidence established that Appellant used or exhibited a “gun” or 
“weapon” to one of the convenience store clerks and another clerk saw 
Appellant reach under his clothing for what she believed to be a “gun.” The 
clerk who actually saw and described the “gun” testified that Appellant held 
the gun while continuing to repeat that he would shoot if the clerks did not 
give him and his co-defendant the money. All three witnesses testified that they 
were in fear of imminent bodily injury or death. We hold that the evidence 
presented is legally and factually sufficient to support the jury’s finding 
that Appellant used or exhibited a deadly weapon, a firearm, in the commission 
of the robberies. See Gomez v. State, 685 S.W.2d 333, 336 (Tex. Crim. 
App. 1985) (holding that “revolver” is a firearm; therefore, revolver is a 
deadly weapon and State proved beyond reasonable doubt that weapon used was a 
firearm).
CONCLUSION
        Having 
found the evidence legally and factually sufficient to support the jury’s 
deadly weapon finding, we overrule Appellant’s sole issue and affirm the 
judgment of the trial court.
   
  
                                                                  PER 
CURIAM
 
  
PANEL 
F: HOLMAN, WALKER, and MCCOY, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
March 10, 2005

 
NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
A challenge to the denial of a motion for instructed verdict is actually a 
challenge to the legal sufficiency of the evidence.  McDuff v. 
State, 939 S.W.2d 607, 613 (Tex. Crim. App.), cert. denied, 522 U.S. 
844 (1997); Franks v. State, 90 S.W.3d 771, 789 (Tex. App.—Fort Worth 
2002, pet. ref’d, untimely filed).  However, Appellant’s brief argues 
both legal and factual sufficiency of the evidence, and requests either an 
acquittal or a reversal and remand for a new trial.  Therefore, because 
this court is obligated to liberally construe briefs, see Tex. R. App. P. 38.9, we construe 
Appellant’s issue on appeal as challenging the legal and factual 
sufficiency of the evidence.